# IN THE COURT OF APPEALS OF IOWA

No. 15-1684
Filed November 25, 2015

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**S.C., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Dylan J. Thomas, Mason City, for appellant father.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorneys General, for appellee State.

Crystal L. Ely of Young Law Office, Mason City, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

S.C. appeals from the juvenile court's order terminating his parental rights to his child A.C., born in 2012. Reviewing his claims de novo, *see In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014), we affirm.

### I. Background Facts and Proceedings.

The father has a long history of using illegal substances; he started using marijuana when he was eleven years old and graduated to methamphetamine use by age seventeen. He was in substance-abuse-treatment programs twice as a juvenile. As an adult, he has been in and out of prison multiple times for drug-related charges, and he has been involved in substance-abuse treatment both in and out of prison. The father has had periods of sobriety, only to relapse. The father also has a history of mild mental illnesses, for which he was prescribed medications, and has struggled with anger-management issues.

A.C. has two older half-siblings, and the three children lived with their mother until approximately June 2014, when they were removed from her care. It was alleged there was domestic violence in the home between the mother and her paramour, who is the father of one of the other children, and that both the mother and her paramour were using illegal substances. A.C.'s subsequent hair-stat test was positive for methamphetamine. The children were adjudicated children in need of assistance (CINA) and A.C. was ultimately placed in the care of her maternal grandfather, where she has since remained.

At the time of the children's removal, S.C. was incarcerated, limiting the services available to him. In July 2014, he pled guilty to possession of a controlled substance, third or subsequent offense, a class "D" felony. *See* Iowa

Code § 124.401(5)(D) (2013). He filed a notice of appeal in that case, and he was released on bond in August 2014.

After his release, the father "was able to immediately initiate contact with both the [Iowa Department of Human Services (Department)] and [the service] provider to establish both skill building and supervised visitation." About a week after his release, he had his first visit with A.C. in six months. While sober, he was "fairly consistent with making his weekly supervised visitation. Generally speaking [the father came] prepared for his visits with [A.C.]. He also [did] a wonderful job interacting with [the child] during the entire visitation time needing few prompts." However, he failed to follow through with the substance-abuse-treatment services recommended after his initial substance-abuse evaluation.

By December 2014, the "appropriateness and positive aspects to the [father's] visits" seemed to "deteriorat[e] or decline." The father had "lesser patience with the [child], he was less prepared and less actively . . . involved with [him]. He seemed more distracted." He still had not begun individual counseling services or substance-abuse treatment. Though he was not on probation at that time, he had "a pending court action regarding possession of illegal drugs."

At the January 2015 review hearing, concerns were noted because the father and the mother had still not seriously engaged in substance-abuse treatment, despite the offer of services and the approaching permanency date. Around the same time, the father withdrew his appeal of his guilty plea, and he was to turn himself in to authorities. He did not do so, nor did he engage in substance-abuse treatment. While he continued to participate in supervised visits, the service provider believed he had come to visits under the influence.

In February, a warrant was issued for the father's arrest. He sent the service provider a text stating, "I have a warrant now. So I gotta go turn myself in. If you see the kids tell them I love them and will miss them a bunch. . .Thank you. Sorry for everything. Please keep me updated on kids." The father subsequently turned himself in, and he was placed in jail awaiting transfer to the prison classification center.

A permanency hearing was held in May 2015, and the father was still incarcerated. The court directed the State to file a petition for termination of the parents' parental rights, and a petition was subsequently filed.

Hearing on the petition was held in September 2015. The father was still incarcerated at that time, serving at a prison camp facility, and he testified by phone. He believed he would be paroled very shortly, possibly the next week, and he requested the court grant him additional time for reunification. He testified he had been sober since his incarceration in February and had "completed a four month long treatment program," and he was "just waiting on the board of parole to give [him his] answer if they are going to give [him his] parole or what's going on." He admitted he had not "really had much contact with [the child]" since his incarceration, only talking to the child by phone a few times. He had not seen the child since being incarcerated in February.

The Department's caseworker testified and acknowledged that when the father was sober, his visits with the child went well and he was able to be a parent to the child. Nevertheless, she recommended the father's parental rights be terminated, explaining:

Well, we've been involved for approximately a year with this family and since that time [the father's] been—he was in prison at the onset, went to jail, came out of jail. I think he had a brief incarceration in there, was incarcerated again and now is back in prison. So within a year's time, he's been incarcerated more than he's not been. [The child] is young. She needs safety and stability. It's very confusing to her when people come and go from her life. She is very safe and stable in [her grandfather's] home. She doesn't have another six months to wait to see if [the father] is released from prison and actually follows through with some of the recommendation that he's had an extended amount of time to follow through and didn't.

Following the hearing, the juvenile court entered its order terminating the father's parental rights. The court, employing the proper three-step analysis, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), found the State proved grounds for termination under Iowa Code section 232.116(1) paragraphs (e) and (h), termination of the father's parental rights was in the child's best interests, and none of the exceptions set forth in section 232.116(3) applied.

The father now appeals, challenging the juvenile court's conclusions as to each step of the analysis.

## II. Discussion.

### A. Grounds for Termination.

When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the paragraphs cited by the juvenile court to affirm. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). On appeal, the father challenges only the termination ruling pursuant to paragraph (e); he does not challenge or mention paragraph (h). Consequently, the father has waived any claim of error on that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is

confined to those propositions relied upon by the appellant for reversal on appeal"); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Nevertheless, because the State clearly met its burden in establishing the ground set forth in Iowa Code section 232.116(1)(h) as to the father, we briefly address that ground.

Under Iowa Code section 232.116(1) paragraph (h), the court may terminate the rights of a parent to a child if there is clear and convincing evidence that a child three years of age or younger "who has been adjudicated a CINA and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing." *D.W.*, 791 N.W.2d at 707 (citing Iowa Code § 232.116(1)(h)). A.C. was adjudicated a CINA and was three years old at the time of the termination hearing. She had been removed from her parents' care since June 2014, and she could not be returned to the father's care at the time of the termination hearing because the father was incarcerated. The State clearly proved this ground for termination of the father's parental rights.

### B. *Factors in Termination*.

In determining "whether to terminate parental rights based on a particular ground, we must give primary consideration to 'the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child.'" *Id.* (citing Iowa Code § 232.116(2)). We simply cannot deprive a child of permanency after the State has proven a ground for termination because we hope "someday a parent will learn to be a parent and be able to provide a stable

home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Rather, "[t]he legislature has established time frames to balance the need to provide parents with a reasonable opportunity to resume care of their [child] and the [child's] long term best interests." *Id.* at 109. "Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not 'await the wanderings of judicial process.'" *J.C.*, 857 N.W.2d at 502. As we have said too many times, children are simply not equipped with pause buttons; we cannot suspend the "crucial days of childhood" to allow parents to "experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

Here, the father had not seen the child in six months when he had his first supervised visit in August 2014, and by February 2015, he was again out of her life. Though he was sober at the time of the termination hearing, he was also incarcerated, serving time for his third or subsequent possession of controlled substances. While we hope the father is successful in his sobriety, there is no evidence here that additional time would yield a different result. It is clear the father loves A.C. However, we agree with the juvenile court that his "drug usage and lack of engagement of services precludes [his] care of [the child] at this time, as well as into the foreseeable future." The father had the opportunity again to work on his sobriety outside of the prison system during the pendency of the case before turning himself in in February 2015, and he chose not to. His choices have required the child to be in the consistent care of others, and she is doing well with her half-siblings in the care of her grandfather. Given the child's young age, permanency must be established. Considering the relevant factors,

we agree with the juvenile court that termination of the father's parental rights is in the child's best interests.

### C. Exceptions to Termination.

Finally, we consider whether any exception in section 232.116(3) applies to make termination unnecessary. *See D.W.*, 791 N.W.2d at 709. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *A.M.*, 843 N.W.2d at 113 (citation and internal quotation marks omitted).

The juvenile court found "none of the exceptions apply," and we agree. Though the father argues, among other things, that the child's "grandfather has custody of the child," the child was not in the grandfather's *legal* custody, as required under section 232.116(3)(a). *See id.* In this case, the most relevant exception is whether "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," *see* Iowa Code § 232.116(3)(c), and we do not find such evidence exists here. Although it is clear that the father loves his child, the father has been in and out of the child's life since birth, and he has had minimal contact with her since February 2015. We do not find that termination would be detrimental to the child based solely on the parent-child relationship. Consequently, we agree with the juvenile court that clear and convincing evidence supports the termination of the father's parental rights.

### III. Conclusion.

After applying the requirements of Iowa Code section 232.116, we find the juvenile court did not err when it terminated the father's parental rights. Accordingly, we affirm the juvenile court's ruling.

**AFFIRMED.**